**Opinion issued October 10, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00090-CV**

———————————

**TAYLAR STOWERS, Appellant**

**V.**

**DONALD RENO, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-81448**

---

**MEMORANDUM OPINION**

This appeal addresses whether a trial court may direct a verdict against a party without allowing her to present her case. We hold that under the circumstances presented here, it may not.

Appellant Taylar Stowers sued Appellee Donald Reno for personal injuries she allegedly sustained in an automobile accident. Shortly before the case went to trial, Stowers's counsel filed an agreed motion to withdraw and for a continuance because he was medically unable to continue representing Stowers. Even though Stowers's counsel was too ill to attend in person, the trial court denied the agreed motion for continuance, failed to rule on the agreed motion to withdraw, and called the case for trial.

But the proceedings that followed could hardly be called a "trial." Because neither Stowers nor her counsel was present in person, the trial court refused to allow them an opportunity to present evidence or argument, or to contest the evidence Reno offered. Instead, it granted Reno's motion for a directed verdict and entered a final take nothing judgment in his favor. We reverse the trial court's judgment.

## Background

Reno was driving in Houston when his vehicle struck another car in which Stowers was a passenger, allegedly injuring her. Stowers sued, claiming negligence.

### *The Pretrial Proceedings.*

Stowers filed suit on November 12, 2018, almost two years after the accident occurred and ten days before the limitations period expired. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). Reno made a general denial and jury demand, and he

2

asserted an affirmative defense of limitations. Reno paid the jury fee on the same day he answered.

In September 2019, Stowers filed her First Amended Petition. The First Amended Petition added a claim for negligence per se and allegations of gross negligence, and sought damages between $200,000 and $1 million.

The trial court first set the case for trial on its two-week docket beginning in 2020. The case was then reset four times. The first two resets were at Reno's request; the other two the trial court apparently initiated.

In February 2020, Reno filed his first motion for continuance, based in part on ongoing discovery issues. Stowers opposed this motion. The next month, the trial court reset the case for trial on the two-week docket beginning January 25, 2021.

Reno again moved for a continuance, on the grounds that written discovery was complete but depositions remained and were being delayed by discovery disputes. Again, Stowers opposed the motion. The trial court granted Reno's second motion for continuance and reset the case for trial in August.

The trial court reset the case two more times, apparently on its own initiative. Ultimately, the trial court reset the case for trial on the two-week docket beginning November 14, 2022.

Five days before the trial setting, Stowers's counsel moved to withdraw and for a continuance. Counsel argued he had to withdraw because he was "being treated

by a number of doctors for chronic medical conditions that materially impair[ed] [his] ability to represent [Stowers]," and because he was scheduled to have "thoracic surgery" on November 18, 2022, which fell during the two-week trial docket on which the case had been set. Counsel noted that the surgery had been rescheduled multiple times, not only because of the surgeon's unavailability but also because of "conflicting medical issues" such as "emergency oral surgery" and a resulting infection.

Trial counsel's withdrawal motion also noted that "over the past several months," he had "experienced a gradual deterioration in his level of occupational, personal, and social functioning due to several psychosocial stressors," and that his "ability to practice law ha[d] been significantly impaired." He concluded it would be "in the best interest of [his] physical and mental health to continue his medical leave from the practice; or, at a minimum, significantly reduce his workload to such a small degree in order to ethically withdraw, close-out, or refer the few remaining cases he has been unable to move or close out." Stowers consented to her counsel's withdrawal and signed the motion to withdraw, and Reno agreed to it as well.

Along with his motion to withdraw, trial counsel also sought a continuance of the trial setting on Stowers's behalf. The motion for continuance was based on the same reasons as the motion to withdraw. Reno agreed to the continuance.

Stowers's counsel set the motions to withdraw and for continuance on the trial court's submission docket for November 21, 2022, which was one week into the two-week trial setting.

***The Case Is Called for Trial.***

The trial court's "Court Procedures" state, "[y]our case is **ON CALL** for the entire two-week period. This means you may be called to trial at any time during the two-week period." The two-week trial docket on which this case was set began on November 14, 2022. During the evening of Wednesday, November 16, the trial court's coordinator emailed Stowers's trial counsel, telling him the case had been assigned for trial that Friday morning, on November 18 at 9:00 a.m.

Stowers's counsel responded the next day (Thursday, November 17) with an email to the court coordinator saying he was on medical leave and had filed a motion for continuance and withdrawal. The coordinator wrote back to say that motions for withdrawal had to be set for oral hearing. Counsel replied by pointing out that the Trial Court Procedures require oral hearings for motions to withdraw "unless all counsel and the client of the attorney seeking withdrawal (as evidenced by the client's signature) agree to the motion." At 4:54 p.m. that day, the coordinator sent an email confirming that the case was set for trial the next morning at 9:00 a.m. and noting that the motions for continuance and withdrawal were not set for submission until the following Monday. The coordinator asked counsel to "[p]lease advise."

5

On the morning of the day of trial, Stowers's trial counsel emailed the coordinator to reiterate that he had health issues preventing him from both trying the case and continuing to represent Stowers. Counsel said he could not drive to the courthouse, and he requested the ability to participate remotely "for as long as my health allows." The coordinator provided a videoconference link, and Stowers's counsel logged on.

***Proceedings Before the Trial Court.***

When the November 18 proceedings began, Reno's counsel was in the courtroom and prepared to move forward with a trial. Stowers's counsel had joined by videoconference. And the venire panel was assembled in a hallway outside the courtroom. Stowers herself was not present when the proceedings began; she joined later by videoconference.

The trial court started by asking Stowers's counsel, "[w]hy aren't you here?" Counsel said he had medical issues preventing him from driving to the courthouse or trying the case, and that he had filed a motion for continuance and withdrawal. When the trial court asked, "[s]o are you saying that you want to conduct this trial remotely?" counsel responded, "I'm not prepared to conduct it. I filed a continuance and withdrawal that I thought was agreed, so I'm a little scared to try the case because I've been sick."

Reno's counsel confirmed that Reno was unopposed to both the motion for withdrawal and the motion for continuance. The trial court pointed out that the motion was not set for submission until the following Monday, and then said, "[s]o this is a 2018 case, so we are well into it and it's one of the older cases, so at this point the Court's inclined to go forward. If you want to—either way, it's going forward. . . . If you are unwell, I'm sympathetic to that, but a continuance should have been on file prior to last week."

The trial court next took a short recess to contact Stowers so that she could join the videoconference. When Stowers joined, the trial court did not swear her in or do anything to indicate she would be testifying; the court began by asking whether she was aware of the trial setting. Stowers said she had been told "I was having a trial coming soon," and that she had been asked the previous week to consent to her trial counsel's withdrawal. After an exchange with Stowers's counsel, the trial court said, "[s]o the Court's position at this point is to go forward with the case. If you're not able to drive [addressing Stowers's counsel], there's obviously other alternatives to you actually driving. Ma'am [addressing Stowers], if you would like to come and prosecute your case, that is obviously your right, but we are looking at a 2018 case." Although it is unclear whether Stowers remained on the videoconference after that exchange, she did not speak again on the record, nor did the trial court address her again.

The trial court then took another recess to consider the motion to continue. When the proceedings resumed, the trial court summarized certain aspects of the history of the case: that Stowers's counsel had repeatedly represented, since August 2021, that he intended to file motions for continuance and withdrawal due to his health issues but had failed to do so. The trial court's recitation of this history did not include mention of its own resettings of the trial date, or the prior continuances that Reno sought and obtained.

Stowers's counsel responded by saying that he had thought he would get better and "be able to go forward," such that he "didn't know [he] had to withdraw until September" of 2022, two months before the trial setting. The trial court replied, "[s]ir, can you be quiet. The discussion is over. The continuance will be denied and so we will go forward. So since you are not able to be here, this case will be dismissed and the 47 lovely citizens of this County will be released from jury service today. All right. So that is the Court's ruling and we're going to go forward."

The trial court told Stowers's counsel it would allow him time to schedule a ride to the courthouse, saying it was being "more than gracious in allowing additional time when [the members of the venire panel] have been here since 9:00 a.m." The trial court continued, "[s]o if you come down to the courthouse by whatever methods, Uber, anything else, you're more than welcome to do that. If not, we will continue with the proceeding and this case will either be dismissed for want

of prosecution or a take nothing judgment will be entered." Counsel responded, "I don't see how my health will allow me to be there with a high-risk and respiratory issues. I'm on an immunizer and I take breathing treatments every three hours. . . . I can't do that."

Stowers's counsel offered to "do the best I can remotely." But because Reno's counsel did not agree to conduct a jury trial remotely, the trial court denied that request.

The trial court then asked Reno's counsel how he wished to proceed. Reno's counsel made an oral motion for directed verdict on two bases: first, that Stowers presented "no evidence of any negligence"; and second, that Stowers's claims were barred by limitations because, while she had filed suit within the limitations period, she had not been diligent in effecting service. Reno's counsel offered four documents as exhibits in support of his limitations argument. He did not present any sponsoring witnesses or authentication evidence. Stowers's counsel objected, which the trial court "noted for the record." The trial court then admitted all four exhibits.

The trial court granted a directed verdict "on the issue of negligence and [Reno's] defense of statute of limitations." After doing so, the trial court remarked, "the directed verdicts have been granted and so this would here conclude this trial." The trial court did not ask Stowers or her counsel whether they had any evidence or arguments to present, or offer them another opportunity to speak.

9

The trial court then called the venire panel into the courtroom, thanked its members for their service, and dismissed them.

***Entry of Final Judgment and Post-Judgment Proceedings.***

The Final Judgment noted that "[n]either [Stowers] nor her attorney appeared in person for trial." As for Stowers's negligence claim, the judgment states, Stowers "did not put on any evidence of the proper standard of care, breach of that standard, or that any breach caused or proximately caused any injury to [her]." On Reno's limitations defense, the judgment continued, Reno "offered exhibits that were admitted into evidence showing [Stowers] filed suit one week before limitations ran and did not perfect service until 105 days after limitations ran. [Stowers] did not present any evidence to show due diligence in perfecting service after filing suit."

The judgment then noted that the trial court "granted [Reno's] motion for a directed verdict on all [Stowers's] claims, granted [Reno's] motion for a directed verdict on [his] affirmative defense of limitations, and dismissed all of [Stowers's] claims with prejudice." Finally, the judgment ordered that Stowers "take nothing by way of this case."

Stowers timely moved for a new trial. Her motion was supported by trial counsel's affidavit, which detailed his health issues and why he could not appear in person at the November 18 proceedings, as well as his ultimately unsuccessful

10

efforts to obtain substitute counsel. Reno did not respond. Stowers's motion for new trial was overruled by operation of law on February 2, 2023.

**Analysis**

In five points of error, Stowers contends the trial court committed reversible error by: (1) entering a directed verdict in Reno's favor without any opportunity to present evidence; (2) denying her agreed motion for continuance; (3) entering judgment on the merits; (4) "dismissing the case" without notice; and (5) denying her motion for new trial. We agree the trial court improperly directed a verdict in Reno's favor without due process, and thus we affirm Stowers's first point of error.

## I. *Standard of Review.*

A trial court can direct a verdict in two circumstances: when the plaintiff fails to present evidence raising a fact issue essential to its right of recovery, or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *See Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 578 (Tex. App.—Houston [1st Dist.] 2007, no pet.). If the trial court grants a directed verdict, we review it under a legal sufficiency standard. *See Sowell v. The Kroger Co.*, 263 S.W.3d 36, 38 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *King Ranch, Inc. v. Chapman*, 18 S.W.3d 742, 750–51 (Tex. 2003)).

Conducting a legal sufficiency review of a directed verdict requires us to determine whether there is any evidence of probative value that raises a material fact issue. *See White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). If so—if there is any conflicting evidence on any theory of recovery—the determination of that issue is for the jury. *See Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994). In other words, a directed verdict is appropriate only when reasonable minds can draw one conclusion from the evidence, and that conclusion favors the movant. *See Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 476 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

But this review for whether "reasonable minds can draw only one conclusion from the evidence," *id*., presupposes that the party against whom the verdict was directed had a chance to present evidence. "Basic due process requires that when a decision maker is called upon to make a decision grounded on evidence, the parties involved should be provided fair notice and a meaningful opportunity to present such evidence." *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 805 (Tex. App—Austin 2000, pet. dism'd).

Therefore, "a directed verdict should not be granted against a party before the party has had a full opportunity to present its case and has rested." *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003). And if a trial court directs a verdict

"before the plaintiff has presented all his evidence, it is reversible error." *Nassar v. Hughes*, 882 S.W.2d 36, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

## II.     *Stowers Did Not Have a Meaningful Opportunity to Present Her Case.*

The parties do not dispute these general principles. Both Stowers and Reno agree a directed verdict is improper when the party against whom it is entered has no opportunity to present evidence. They differ, however, on whether the trial court proceedings gave Stowers that opportunity. Stowers claims they did not; Reno claims they did because "[t]he trial court did not prevent her" from presenting evidence. The question before us is thus whether Stowers had a meaningful opportunity to present evidence.

We conclude she did not. As we explain below, the proceedings bore little if any resemblance to a "trial," and at no point did the trial court offer Stowers or her counsel the chance to call witnesses, introduce documents, or present arguments. After denying Stowers's motion for continuance, the trial court's immediate next step was to hear and then grant Reno's motion for directed verdict, without inviting or allowing a response from Stowers, who may not have even still been on the video call. In this scenario, a directed verdict was improper. *See Tana Oil & Gas*, 104 S.W.3d at 82; *Wedgeworth v. Kirksey*, 985 S.W.2d 115, 116 (Tex. App.—San Antonio 1998) (directing a verdict is "reversible error if done before the plaintiff has presented all his evidence").

### A. The Trial Court Proceedings Did Not Resemble a "Trial" at Which Stowers Could Present Her Case.

Early in this litigation, both Stowers and Reno made jury demands, and Reno paid the jury fee. The parties thus perfected the right to a jury trial, on which Stowers was entitled to rely. *See* TEX. R. CIV. P. 220; *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996) ("Only when a party demands a jury *and* pays the fee can the opposing party rely on those actions." (emphasis in original)); *Trejo v. Huy*, No. 05-14-00310-CV, 2015 WL 4109989, at *2 (Tex. App.—Dallas July 8, 2015, pet. denied) (mem. op.) ("[A]n opposing party may rely on another party's jury demand, when a demand is made and the fee is paid."). And in line with this perfected jury demand, the trial court set the case for a "jury trial" with a venire panel summoned and waiting.

Reno contends Stowers waived her right to a jury trial by participating in a bench trial without objection. *See, e.g.*, *In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("In order to preserve a trial court's error in conducting a bench trial despite a party's perfected right to a jury trial, the party must timely object to the trial court's action or affirmatively indicate that it intends to exercise its right to a jury trial."). But the problem was not that the trial court conducted a *bench* trial despite Stowers's perfected jury demand. The problem was that the trial court conducted no trial at all, neither bench nor jury. And without a trial, the trial court deprived Stowers of the opportunity to present her case before

14

entering a directed verdict against her. *Cf. In re Commitment of James*, No. 01-19-00734-CV, 2021 WL 4597105, at \*13 (Tex. App.—Houston [1st Dist.] Oct. 7, 2021, pet. denied) (mem. op.) ("The general rule is that a trial court should not render a directed verdict against a party before that party has had a full opportunity to present the party's case and has rested.").

Despite setting the case for a jury trial, the trial court never indicated a jury trial would begin once the proceedings began. It did not call the case, empanel a jury, or ask the parties to proceed without a jury. Instead, it began by asking Stowers's counsel why he was not present in the courtroom. Appearing by videoconference, counsel announced he was not ready due to illness and said he had filed agreed motions for withdrawal and a continuance. The trial court then questioned Stowers's counsel about those motions. It began, in other words, by taking up pretrial matters.

In considering her pretrial motions, the Court joined Stowers into the video conference. But the trial court never swore her in, and it did not ask Stowers or her counsel whether they wished to call any witnesses, present any evidence, or make any arguments.

The trial court then announced it was denying the motion for continuance. But the court failed to indicate trial had begun. Instead, it offered Stowers's counsel the chance to travel to the courthouse, so that a trial could begin if and when he arrived.

15

When counsel responded that his medical condition would prevent him from being there in person, the trial court immediately said it would "proceed forward."

"Proceed forward," though, did not mean moving forward with a trial. Again, the trial court never suggested a trial would begin; it neither empaneled a jury nor asked Stowers to proceed, despite both Stowers and her counsel participating by video conference. Instead, the trial court told Stowers's counsel that if he could not appear in person, it would "dismiss this case for want of prosecution, or at the election of defense counsel, they could proceed forward with a take-nothing judgment." Stowers thus was told judgment would be entered against her, before she had had a chance to present evidence or argument. Any such proceeding cannot be described as a "trial" that gives a litigant a meaningful chance to present her case.

Rules 265 and 266 of the Texas Rules of Civil Procedure confirm this is so. Rule 265 establishes the order of proceedings in a jury trial. The party bearing the burden of proof begins with an opening statement to the jury, followed by an opening statement from the adverse party. *See* TEX. R. CIV. P. 265(a). From there, the plaintiff introduces its evidence, and then the defendant introduces its evidence. *See* TEX. R. CIV. P. 265(b). And finally, the parties are confined to rebuttal testimony. *See* TEX. R. CIV. P. 265(f). Likewise, under Rule 266, the plaintiff has the right to both open and close. *See* TEX. R. CIV. P. 266.

16

The trial court ignored these rules, and the proceedings bore no resemblance to the process they describe. Stowers was not allowed to make an opening statement, conduct voir dire, introduce any evidence through witnesses, question any of the evidence presented by Reno, or make a closing argument. The proceedings moved immediately from consideration of pretrial motions to a directed verdict. Stowers was not afforded any opportunity to present her case before a directed verdict was entered against her. *See United Copper*, 17 S.W.3d at 800, 805 (no "meaningful opportunity to present evidence" where "confusing nature" of administrative agency's rules prevented litigant from introducing evidence). The trial court thus denied Stowers her right to due process. *See Univ. of Texas Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

### B. The Trial Court Grants Reno's Motion for Directed Verdict Without Giving Stowers an Opportunity to Respond.

After denying Stowers's motion for continuance, the trial court immediately turned to Reno's counsel and asked, "How would you like to proceed?" Reno's counsel moved for a directed verdict, and the trial court granted it. The trial court did so because Stowers had not presented any evidence in support of her negligence claim, and because it concluded Reno had proved his affirmative defense of limitations.

17

Before granting the directed verdict, the trial court did not ask either Stowers or her counsel if they had any evidence or witnesses, nor did it ask if either had a response to Reno's motion. When counsel tried to interject to argue again in support of a continuance, the trial court told him to "[p]lease be quiet. I've listened to it." The trial court did nothing to indicate it was giving either Stowers or her counsel an opportunity to present evidence of negligence, or evidence to rebut Reno's limitations defense.

And while the trial court at one point earlier in the proceedings told Stowers it was "obviously [her] right" to "come and prosecute your case," that statement was not the meaningful opportunity to present evidence the law requires. *See Fuentes v. Zaragoza*, 555 S.W.3d 141, 166 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("The right to be heard assumes a full hearing before a court having jurisdiction over the matter, the right to introduce evidence, and the right to judicial findings based on the evidence."). The trial court never followed up by asking Stowers whether she had new counsel, or whether she wished to testify herself, call any witnesses, present any evidence, or make any arguments. *Cf. City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 250 (Tex. App.—Dallas 2007, pet. denied) ("'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.'" (quoting *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970))).

The Texas Rules of Civil Procedure contemplate only a few circumstances in which trial courts may forgo a trial and still render judgment on the merits, such as in the summary judgment context (Rule 166a) or in a case submitted on an agreed statement of facts (Rule 263). This case is not one of them. The trial court proceeded to a verdict, without due process. *Cf. Wedgeworth*, 985 S.W.2d at 117 ("The purpose of a motion for a directed verdict is to show the trial court that a cause of action does not exist. This can only be done *after* the plaintiff has had *full opportunity* to present their evidence." (emphasis in original)).

This conclusion is not changed by Reno's contention that the trial court did not "prevent" Stowers from making her case. The dispositive question is not whether the trial court acted affirmatively to prevent Stowers from presenting evidence and argument, but whether it gave Stowers an *opportunity* to do so. *See Tana Oil & Gas*, 104 S.W.3d at 82 ("Ordinarily, a directed verdict should not be granted against a party before the party has had a *full opportunity* to present its case and has rested." (emphasis added)); *Para-Chem S., Inc. v. Sandstone Prods., Inc.*, No. 01-06-01073-CV, 2009 WL 276507, at *20 n.17 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. denied) (mem. op.) ("Importantly, a directed verdict may only be properly granted after the plaintiff has had *the opportunity* to present all of its evidence." (emphasis added)). The court did not.

19

Nor does it matter that the trial court relied on Reno's limitations defense as a basis for granting the directed verdict. His limitations defense was that while Stowers filed suit within the limitations period, it was nonetheless time-barred because she effected service of process after the limitations period expired and was not diligent in doing so. *See Proulx v. Wells*, 235 S.W.3d 213, 217 (Tex. 2007) ("[A] timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation."); *see also Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) ("If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on the defendant.").

Reno supported his limitations argument with the introduction of four documents showing that Stowers served Reno 113 days after the limitations period expired. Reno did not offer any witness testimony or other evidence to authenticate the documents, and it is unclear whether Stowers or her counsel even had the chance to review them. And because there were no witnesses, neither Stowers nor her counsel had the opportunity to cross-examine anyone about the documents. Over objection by Stowers's counsel, the trial court nonetheless admitted all four documents into evidence.

Even assuming Reno's exhibits were properly admitted, without due process, granting a directed verdict on Reno's limitations defense was improper. A

limitations defense based on a lack of diligence in effecting service is a burden-shifting mechanism. Once established, it shifts the burden to the plaintiff to prove diligence. *See Proulx*, 235 S.W.3d at 216 ("[O]nce a defendant has affirmatively pled the limitations defense and shown that service was effected after limitations expired, the burden shifts to the plaintiff to explain the delay. . . . Thus, it is the plaintiff's burden to present evidence about the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." (citation and internal quotation marks omitted)). Assuming Reno proved his limitations defense, the burden then fell to Stowers to show she was diligent in serving Reno with process.

While it is possible Reno is correct and Stowers was dilatory in effecting service, such that her claims are time-barred, it is equally possible Stowers was diligent and has a plausible explanation for the time that elapsed between the date she filed suit and the date on which she effected service. On this record, we cannot know. The trial court never allowed Stowers to present any witnesses, testimony, or exhibits, so we have no indication whether she could have met the burden that shifted to her once Reno proved his limitations defense. *Cf. Stearns v. Martens*, 476 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("According to basic principles of trial procedure, a trial court should not render a directed verdict against

21

a party before that party has had a full opportunity to present the party's case and has rested.").

"A motion for directed verdict may be granted only when the movant is entitled to prevail as a matter of law, a circumstance that rarely occurs before the non-movant has had an opportunity to offer evidence." *Safway Scaffold Co. of Hous., Inc. v. Safway Steel Prods., Inc.*, 570 S.W.2d 225, 228 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). Here, the trial court afforded Stowers no such opportunity. And as a result, it was error for the trial court to enter a directed verdict in Reno's favor. *See Producer's Constr. Co. v. Muegge*, 669 S.W.2d 717, 719 (Tex. 1984) ("The trial court erred in rendering judgment before Producer's had an opportunity to present evidence and rest its case."); *Nassar*, 882 S.W.2d at 38 ("reversible error" for trial court to enter directed verdict "before the plaintiff has presented all his evidence").

Because the trial court's directed verdict was entered in error, its entry of a take-nothing judgment based on the directed verdict was also improper. And because our conclusion on Stowers's first point of error decides all issues necessary to dispose of this appeal, we do not reach her remaining arguments. *See* TEX. R. APP. P. 47.1.

## Conclusion

While we understand the trial court's eagerness to clear its docket of older cases, as well as its appreciation for the demands being placed on the venire members' time, such interests in efficiency and expediency cannot be allowed to outweigh a litigant's right to due process. Stowers should have been allowed the opportunity to present her case before the trial court entertained Reno's directed verdict motion. Because she was given no such opportunity, we reverse the trial court's judgment and remand for a new trial.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.